Sylvester LUCAS, Plaintiff-Appellant,

v.

Francis O'LOUGHLIN, individually and in his official capacity as Sheriff of St. Johns County; Ronald Janson, individually and in his official capacity as Captain of Auxiliary Services for the St. Johns County Sheriff's Office; St. Johns County, Florida, Defendants-Appellees.

Nos. 86–3347, 87–3153.

United States Court of Appeals, Eleventh Circuit.

Nov. 2, 1987.

Courtney Johnson, Sheppard & White, P.A., Jacksonville, Fla., for plaintiff-appellant in No. 86–3347.

Gayle Smith Swedmark, Madigan, Parker, Gatlin, Swedmark and Skelding, Tallahassee, Fla., for defendants-appellees in No. 86–3347.

Peter Reed Corbin, Corbin & Dickinson, Jacksonville, Fla., for defendant-appellee St. Johns County.

William J. Sheppard, Courtney Johnson, Sheppard & White, P.A., Jacksonville, Fla., for plaintiff-appellant in No. 87–3153.

Gayle S. Swedmark, Madigan, Parker, Gatlin, Swedmark & Skelding, P.A., Tallahassee, Fla., Peter R. Corbin, Corbin & Dickinson, P.A., Jacksonville, Fla., for defendants-appellees in No. 87–3153.

Before TJOFLAT and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

These are two appeals by the plaintiff below, Sylvester Lucas, from two judgments of the trial court of which he complains. The two appeals have been consolidated.

## I. STATEMENT OF THE CASE

Lucas, who was at that time deputy sheriff of St. Johns County, Florida, was terminated by O'Loughlin, the sheriff, on grounds that the jury below found violated Lucas' First Amendment rights. During the course of the trial, the trial court dismissed Lucas' complaint against St. Johns County. The verdict favoring Lucas was for the total sum of $18,000, including back pay and embarrassment and humiliation. The petitioner then moved for further equitable relief, including reinstatement and incidental back pay. This motion was denied. Lucas then appealed from that judgment of the trial court as well as from the judgment dismissing the county as a defendant.

Thereafter, the county moved for attorney's fees and costs against the plaintiff, claiming that it was entitled to attorney's fees under the principle announced by the Supreme Court in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). The trial court awarded attorney's fees to the county in the amount of $10,000 and costs in the amount of $1177.09. The plaintiff then appealed from that judgment.

## II. THE ISSUES

1. Under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), is a county liable for the acts of a county official who is separately elected under the state constitution and laws but who has absolute final authority to carry out the acts such as those complained of?

2. Assuming that the trial court was correct in dismissing the action against the county, was the county entitled to attorney's fees under Title 42, § 1988 and on the theory announced by the Supreme Court in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)?

3. Did the court err in not granting the plaintiff reinstatement to his position as deputy sheriff when a new sheriff had been elected after the termination complained of and where the statutes authorized the sheriff to name such deputies as he saw fit?

## III. DISCUSSION

■ A. On the issue of county liability, the parties both rely on the Supreme Court decision in *Monell*. The only language in that opinion dealing with the issue before us is as follows:

1. Section 30.53, Fla.Stat. (1985) provides in pertinent part as follows:

The independence of the sheriffs shall be preserved concerning the purchase of supplies and equipment, selection of personnel, and the hiring, firing, and setting of salaries of such personnel ...

We conclude therefore that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers *or by those whose edicts or acts may fairly be said to represent official policy*, inflicts the injury that the government as an entity is responsible under § 1983.

436 U.S. at 694, 98 S.Ct. at 2037 (emphasis added.)

The appellant here contends that since it is undisputed that the sheriff of St. Johns County has absolute and unfettered authority over the appointment, retention, rate of pay and acts of his deputies under the state law whatever acts the sheriff may carry out necessarily represent the "official policy" of St. Johns County as to the challenged conduct. The county, on the other hand, contends that it is no way responsible for the acts of the sheriff. It asserts that the sheriff's office and the functions thereof are completely independent of the county government—the county has no role in the selection of the sheriff, who under state law, is instead elected by the people of the county to carry out his duties.

There can be no dispute about the fact that O'Loughlin was sheriff of St. Johns County and he carried out whatever functions the state law provided for a sheriff to do within the territorial confines of St. Johns County.[1] His salary and that of his deputies were paid out of county funds. These salaries and the expenses of his office, including the operation and maintenance of the jail, were budgeted each year by the sheriff and submitted to the board of county commissioners of St. Johns County.

Section 30.07. Fla.Stat. (1985) provides with respect to the appointment of deputies as follows:
*Deputy sheriffs.*—Sheriffs may appoint deputies to act under them who shall have the same power as the sheriff appointing them, and for the neglect and default of whom in the execution of their office the sheriff shall be responsible.

In such situation, we note a decision of the United States Court of Appeals for the Fifth Circuit in *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir.1980).[2] The Court in *Familias Unidas* dealt with a problem presented by the action of a county judge who, under the state law, holds absolute sway over the tasks or areas of responsibility entrusted to him by the state statute. The Court found that the action of the state judge upon which the plaintiff sought to bind the county was an act of the judge mandated by a state statute, rather than one of the functions normal to the operation of a county judge.[3] The plaintiff, therefore, lost on his contention that the county should be liable. However, in discussing the question of county liability, the Court stated as follows:

> Because of the unique structure of county government in Texas, the judge—like other elected county officials, *such as the sheriff* and treasurer—holds virtually absolute sway *over the particular tasks or areas of responsibility entrusted to him by state statute* and is accountable to no one other than the voters for his conduct therein. *Id.* at 347, E. Jones, J. Ericson, L. Brown, & R. Trotter, Practicing Politics in Texas 205 (3d ed.1977). *Thus, at least* in those areas in which he, alone, is the *final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one "whose edicts or acts may fairly be said to represent official policy" for which the county may be held responsible under section 1983.*

619 at F.2d 404 (emphasis added.)

While the language above in *Familias Unidas* may be considered as dictum, it has been accepted as binding in the subsequent Fifth Circuit opinion in *Van Ooteghem v. Gray*, 774 F.2d 1332 (5th Cir.1985). In *Van Ooteghem*, the Court held that a county treasurer, who, under Texas law, as is true under Florida law, was by state law elected by the people of the county, nevertheless acted for the county in performing the functions for which he was elected. The Court stated:

> The first issue is whether Gray's actions in firing Van Ooteghem are more properly characterized as the effectuation of the policy of the State of Texas or as an effectuation of discretionary local duties in the administration of county government. We are persuaded that the County Treasurer's decisions regarding termination of Van Ooteghem fall on the local not the state side of his duty: he was about the business of county government. . . .

774 F.2d at 1337.

We conclude that the same principle applies to this case. Although elected by virtue of state law, he was elected to serve the county as sheriff. In that capacity, he had absolute authority over the appointment and control of his deputies. His and their salaries were paid by local taxation and according to a budget approved by the county commissioners. We conclude, therefore, that his act was the act of St. Johns County. The trial court erred in dismissing the county as a defendant.

■ B. Our decision that the dismissal of the county was error, of course, disposes of appellant's contention that he was improperly charged attorney's fees and costs. Under the circumstances the county was not a prevailing party. However, the additional burden that rests on a successful defendant to obtain a judgment of attorney's fees against a plaintiff under 42 U.S.C. § 1988 and as delineated in *Christiansburg, supra*, causes us to comment about the action of the trial court in this case. The court itself stated: "The law is screwed up in this area." The court also said: "Well, I'm pretty well convinced, but

---

**2.** This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc).

**3.** The act complained of was mandated by a state statute which required a county judge to

issue an order requiring the disclosure of the names of the members of any organization connected with the boycott of county schools. The court thus held that the county judge was the responsible officer of the state instead of the county.

*I still think there is some confusion in the law in this area,* and there is no telling what the appellate court is going to do...."

 It appears to us that if the trial court clearly recognized that the law with respect to county liability under the circumstances of this case was still confused, it would be improper to grant the county its attorney's fees under the *Christiansburg* doctrine. In that case, the Supreme Court established the standard:

> In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

434 U.S. at 421, 98 S.Ct. at 700.

We do not say that the fact that the trial court's decision on this matter has been reversed is alone a basis for holding the trial court erred in granting attorney's fees to the successful defendant. We base the decision that it was improper in this case on the fact that the trial court itself recognized that there was doubt about the correctness of its action in dismissing the complaint against the county.

 C. The appellant contends that the district court erred in denying him reinstatement to his former position of deputy sheriff. The parties agree that the proper legal standard in a wrongful discharge case is that a prevailing plaintiff is ordinarily entitled to reinstatement absent "unusual circumstances." *Donnellon v. Fruehauf Corp.,* 794 F.2d 598, 602 (11th Cir.1986); and *Darnell v. City of Jasper,* 730 F.2d 653, 655 (11th Cir.1984).

It is apparent from the decision of the trial court that it found such unusual circumstances to exist in the peculiar status of the sheriff and his deputies under the Florida law. The sheriff's term, and therefore the term of the deputy, expired while the litigation was proceeding, and a new sheriff had been elected.

Appellant claims that this fact is not an unusual circumstance sufficient to deny

him the right to reinstatement, saying that he was entitled to be reinstated even if the new sheriff could fire him immediately, so long as such termination would not be an unconstitutional one. It seems, therefore, that appellant's contention for this relief was *de minimis,* for, under his argument, if he should be reinstated by the order of the court, the new sheriff could terminate him the same day on the ground that he preferred the person whom he had already appointed in Lucas' place.

We conclude that the trial court did not err in denying the plaintiff reinstatement to his position as deputy sheriff.

The judgment dismissing St. Johns County as a party defendant and the judgment granting St. Johns County attorney's fees and costs are REVERSED and the judgment denying reinstatement to the plaintiff is AFFIRMED.